1

STEPTOE & JOHNSON LLP
201 E. Washington St., Ste. 1600

2

Phoenix, Arizona 85004-2382
Telephone: (602) 257-5200

3

Facsimile:  (602) 257-5299

4

David J. Bodney (06065)
dbodney@steptoe.com

5

Peter S. Kozinets (019856)
pkozinets@steptoe.com

6

7

Attorneys for Defendant
Technical Analysis, Inc.

8

UNITED STATES DISTRICT COURT

9

DISTRICT OF ARIZONA

10

MARKET STUDIES, LLC,                    )    No. CV 2011-01895-JAT-PHX
                                                           )

11

                          Plaintiff,           )    **DEFENDANT TECHNICAL**
                                                           )    **ANALYSIS, INC.'S MOTION FOR**

12

            vs.                                    )    **JUDGMENT ON THE PLEADINGS**
                                                           )

13

TECHNICAL ANALYSIS, INC.,           )    (Oral Argument Requested)
                                                           )

14

                          Defendant.       )
                                                           )

15

16

Preliminary Statement

17

          To stifle public discourse and competition, Plaintiff Market Studies, LLC alleges

18

that copyright law gives it a monopoly over the use of a particular analytical *method*

19

published by Thomas DeMark to "measure the performance of certain financial

20

markets."   [Compl. ¶ 6]   Specifically, Plaintiff claims that Defendant Technical

21

Analysis, Inc. ("TA") infringed its copyright by publishing an article in the September

22

2011 issue of its magazine, *Technical Analysis of Stocks & Commodities* ("*Stocks &*

23

*Commodities*"), that reviews DeMark's method and explains that one of his formulas

24

can be expressed mathematically and rendered in computer code.   Yet Plaintiff's

25

copyright claim is absolutely foreclosed by the Copyright Act, which does *not* protect

26

processes, methods, formulas or ideas.  The Act unequivocally states that "[i]n *no* case

27

does copyright protection for an original work of authorship extend to *any* idea,

28

procedure, process, system, method of operation, concept, principle, or discovery,

regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b) (emphasis added).  This statutory limitation is rooted in the fundamental principle that an author may *not* prevent others from freely using systems or methods disclosed in a published text, unless the author secures a *patent* for that subject matter.  Otherwise, "[t]o give to the author of the book an exclusive property in the art disclosed therein . . . would be a *surprise* and a *fraud upon the public*." *Baker v. Selden*, 101 U.S. 99, 102 (1879) (emphasis added).

Simply put, if Plaintiff wanted to corner the market on the formula at issue, Plaintiff should have sought a patent – or kept it a trade secret.  Plaintiff did neither.  Rather, DeMark published the formula in numerous books and articles.  Accordingly, Plaintiff's copyright infringement claim against TA is insupportable, and Count I of the Complaint should be dismissed.

Plaintiff's trademark infringement claim (Count IV) is similarly deficient.  TA used Plaintiff's trademarks only to refer directly to DeMark's method – not to identify the source of its own products or services.  Indeed, the clearest – and perhaps only – way for TA to discuss one of DeMark's formulas is for TA to use the very name that DeMark gave to it.  The Ninth Circuit protects the use of another's marks to identify another's work as "nominative fair use." *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992).  Such "nominative" uses do not create a likelihood of confusion among consumers because they do not suggest that Plaintiff sponsored or endorsed TA's published materials. Moreover, TA has expressly disclaimed any affiliation with Plaintiff – eliminating any claim that TA has created a likelihood of confusion or traded on plaintiff's goodwill.

Plaintiff's state-law claims for unfair competition (Count II) and unjust enrichment (Count III) also fail.  Not having infringed Plaintiff's intellectual property rights, TA could not have engaged in unfair competition or have been unjustly enriched.  In any event, the Copyright Act preempts Plaintiff's state-law claims insofar as Plaintiff seeks to use them to protect allegedly copyrightable expression.  17 U.S.C. § 301.  In

addition, if the Court dismisses Plaintiff's copyright and trademark claims, the Court no longer has federal-question jurisdiction, and Plaintiff's pendent state-law claims should be dismissed as well.

Summary of the Complaint's Allegations[1]

The September 2011 issue of TA's monthly magazine, *Stocks & Commodities*, which is available in print and electronically on TA's website, includes an article by Andrew Coles entitled "TD Sequential and Ermanometry for Intraday Traders" (the "Coles Article" or "Article").  [Compl. at ¶¶ 9-10; Ex. A hereto (Coles Article)]  The Article describes some of the methods that Thomas DeMark published in his 1999 book *Day Trading Options* to measure market performance and determine when a day trader should buy or sell stock.  [Compl. ¶ 6; Ex. A at 1]  Plaintiff refers to these methods generally as the "DeMark Indicators," and individually as "Sequential," "Setup," "Countdown" and "Combo."  [Compl. ¶¶ 6, 19 and Ex. 2 thereto]

Focusing on DeMark's "TD Sequential" indicator, Coles explains that the indicator adheres to the following two conditions:

> 1  A bearish price flip whereby price must close higher than the close four bars earlier, followed by a close less than the close four bars earlier
>
> 2  Nine consecutive closes, each one less than the corresponding close four bars earlier (where the bar on which the bearish price flip occurs qualifies as bar of the buy setup).

[Ex. A at 2]  Coles further explains that the TD Sequential can be expressed mathematically in four lines of computer code.   [Ex. A at 1; Compl. ¶¶ 6-7]  Specifically, in a sidebar to the Article, Coles refers to sample code showing how the formula can be automated in MetaStock, one type of market analysis software.  [Ex. A at 2]  Sample codes for other platforms – such as Microsoft Excel – appear in the

---

[1]  The same legal standards that apply to Rule 12(b)(6) motions to dismiss are also applied to Rule 12(c) motions for judgment on the pleadings.  *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).

"Traders' Tips" section of *Stocks & Commodities* and on www.traders.com. [Ex. B hereto (Traders' Tips); Ex. C hereto (http://www.traders.com/Documentation/FEEDbk_docs/2011/09/TradersTips.html)][2]

Plaintiff alleges that it holds the copyright to DeMark's 1999 book and – apparently by extension – to the ideas disclosed in the book, and that it never licensed TA to reproduce or create derivative works from them. [Compl. ¶¶ 7-8, 13, Ex. 1 (copyright registration for 1999 book)] Plaintiff further alleges that it has developed and licensed the creation of its own software implementing the "DeMark Indicators." [*Id.* ¶ 7] Based on these allegations, Plaintiff draws the legal conclusion that the computer code published by TA infringes its copyright rights. [*Id.* ¶ 11] However, Plaintiff does not allege that the computer code TA published directly copies or infringes any software developed or licensed by Plaintiff.[3]

In addition, Plaintiff alleges that it owns the federal trademark registrations in the DeMark Indicators and related word marks. [Compl. ¶ 16, Ex. 2] Plaintiff asserts that TA used Plaintiff's marks to create confusion in the marketplace and offer competing goods and services, while trading on Plaintiff's goodwill. [Compl. ¶¶ 19-20, 23, 47] However, Plaintiff does *not* allege that TA took any affirmative steps to suggest that Plaintiff sponsored or endorsed the Coles Articles or the accompanying computer code. *Nor* does Plaintiff acknowledge the disclaimer on the inside cover of *Stocks & Commodities* stating that "[t]he names of products and services presented in this magazine are used only in an editorial fashion, and to the benefit of the trademark

---

[2] The Court may consider the Coles Articles, Traders' Tips and TA's website for this Motion because the Complaint refers to them (*e.g.*, Compl. ¶ 10), Plaintiff's claims rely on them, and their authenticity is not questioned. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

[3] Plaintiff provided proof of copyright registration only for DeMark's 1999 book on day trading. [Compl., Ex. 1] It did not offer proof of registration for any other works, such as computer code. Because such registration is a prerequisite to an infringement suit concerning such works, 17 U.S.C. § 411(a), Count I of Plaintiff's Complaint can only be read as alleging infringement of Plaintiff's copyright in the 1999 book. To the extent Plaintiff asserts otherwise, Count I is barred by Section 411(a).

owner, with no intention of infringing on trademark rights." [Ex. D hereto (inside cover of *Stocks & Commodities*)][4]

Plaintiff also asserts state-law claims for unfair competition and unjust enrichment arising from the same published materials. [Compl. ¶¶ 37-45] Plaintiff invokes the Court's supplemental jurisdiction over these claims; it does not allege any basis for diversity jurisdiction. [*Id*. ¶ 4]

<u>Argument</u>

## I.   THE COPYRIGHT ACT EXCLUDES PLAINTIFF'S FORMULA FROM PROTECTION.

To establish copyright infringement, Plaintiff must prove: (1) it owns the copyright in the work at issue; and (2) the defendant actually copied protected elements of the work. *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). For the purposes of this Motion only, TA assumes that Plaintiff owns a federally-registered copyright in the book identified in Exhibit 1 to the Complaint. Yet Plaintiff's copyright does *not* extend to unprotected elements of that book, including the formula at issue here – and Plaintiff cannot state a claim for copyright infringement as a matter of law.

Plaintiff makes no claim that TA published copies of any text or illustrations from DeMark's 1999 book. Rather, Plaintiff complains that TA published computer code that uses the "TD Sequential" formula, part of the system taught in the book for measuring the performance of stock and commodities markets. Such formulas, systems or methods, however, are *not* protected by the Copyright Act.

Indeed, the subject matter limitations of Section 102(b) are absolute – and they clearly exclude Plaintiff's formula from copyright protection. The Act states: "In *no*

---

[4] After this litigation commenced, TA also added a disclaimer to its website and to reprints of the Coles Article, as explained below. Although these disclaimers are not referenced in the Complaint, the Court may take judicial notice of them. *See* Fed. R. Evid. 201; *United States v. 14.02 Acres of Land More or Less in Fresno County*, 547 F.3d 943, 955 (9th Cir. 2008) (judicial notice does not convert Rule 12 motion into one for summary judgment); *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 219 n.11 (3th Cir. 2000) (taking judicial notice of trademark disclaimer in *Victoria's Secret* catalogue).

case does copyright protection for an original work of authorship extend to *any* idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."   17 U.S.C. § 102(b) (emphasis added).   The Copyright Office has made crystal clear that *formulas* like Plaintiff's are excluded under Section 102(b):

> Copyright law does *not* protect ideas, methods, or systems.   Copyright protection is therefore not available for ideas or procedures for doing, making, or building things; scientific or *technical methods* or discoveries; *business operations or procedures*; *mathematical principles*; *formulas or algorithms*; or any other concept, process, or method of operation.

U.S. Copyright Office, Circular 31, at 1, www.copyright.gov/circs/circ31.pdf (2010) (emphasis added).

The statutory exclusion for formulas, systems, methods and the like derives from an unbroken chain of copyright cases that predate, but are famously summarized in, *Baker v. Selden*, 101 U.S. 99 (1879).   In *Baker*, the Supreme Court held that Selden's *copyright* in a book that explained his new method of accounting did *not* confer a monopoly over his system, or entitle him to sue other authors who sought to use or improve upon it.   Such protection must be sought, if at all, through patent law:

> The novelty of the art or thing described or explained has nothing to do with the validity of the copyright.   *To give to the author of the book an exclusive property in the art described therein, when no examination of its novelty has ever been officially made, would be a surprise and a fraud upon the public.   That is the province of letters-patent, not of copyright.* The claim to an invention or discovery of an art or manufacture must be subjected to the examination of the Patent Office before an exclusive right therein can be obtained; and it can only be secured by a patent from the government.

101 U.S. at 102 (emphasis added). *See also Mazer v. Stein*, 347 U.S. 201, 217 (1954) ("[u]nlike a patent, a copyright gives no exclusive right to the art disclosed").

In fulfilling its constitutional mandate "To promote the Progress of Science and useful Arts," U.S. Const. art. I, § 8, cl. 8, Congress thus struck an essential balance in Section 102(b):   Authors are granted exclusive use of their *expressions*, but must seek patent protection to protect ideas, processes, systems and methods.   This balance

recognizes that a copyright is much easier to obtain than a patent. *Compare* 17 U.S.C. § 102(a) (copyright is obtained simply by authoring work and fixing it in a tangible medium of expression) *with* 35 U.S.C. §§ 111–135 (patent valid only upon registration and rigorous examination process). It also recognizes that copyright protection lasts far longer than a patent monopoly. *Compare* 17 U.S.C. § 302(a) (copyright protection lasts for the life of author plus seventy years) *with* 35 U.S.C. § 154(a)(2) (patent term is twenty years from date of filing). Thus, if Plaintiff wishes to obtain exclusive use of its processes, methods and formulas, it must endure the more rigorous patent application process. Plaintiff cannot circumvent that process by claiming copyright protection.

This fundamental limit on the scope of copyright law protects vital First Amendment rights of subsequent authors, advances "the ongoing progress of science (that is, knowledge creation and dissemination)" and "promotes ongoing innovation and competition in the marketplace." Pamela Samuelson, *Why Copyright Law Excludes Systems and Processes From the Scope of its Protection*, 85 Tex. L. Rev. 1921, 1934 (2007). Indeed, *Baker* itself recognizes that copyright law must not be used to stifle public discussion, innovation and competition, especially where the copyrighted work explicates new methods of scientific, technical or practical analysis, or describes functional tools or processes. Thus, for example, "[t]he copyright of a work on mathematical science cannot give to the author an exclusive right to the methods of operation which he propounds, or to the diagrams which he employs to explain them." *Baker*, 101 U.S. at 103. Rather, "[t]he very object of publishing a book on science or the useful arts is to communicate to the world the useful knowledge which it contains" – an object that would be "frustrated" if such knowledge could not be used without fear of incurring liability under copyright law. *Id*.

Here, too, DeMark's 1999 book teaches a popular method of measuring the performance of stock and commodities markets, and of tracking pricing trends in those markets. [*See, e.g*., Compl. ¶ 6; Ex. A hereto (Coles Article)] DeMark's published works communicate to the world the useful knowledge they contain, and allowing

Plaintiff to claim copyright protection over the specific methods and formulas taught in those works would upend the ability of others to refine, criticize and use them.

The Copyright Office has similarly explained that Section 102(b) prevents authors from using copyright law to sue others who use or adopt systems, methods or processes disclosed in a published book:

> Suppose, for example, that an author writes a book explaining a new system for food processing. *The copyright in the book* . . . prevents others from copying or distributing the text and illustrations describing the author's system. But it *will not give the author any right to prevent others from adapting the system itself for commercial or other purposes or from using any procedures, processes, or methods described in the book.*

U.S. Copyright Office, Circular 31, at 1 (emphasis added).

Yet that is precisely what Plaintiff seeks to do here. In the Coles Article and on its website, TA has summarized and restated one of the formulas disclosed in DeMark's books and articles, and has shown how that formula can be expressed mathematically and in computer code. Plaintiff holds no patent in the formula, or in the method of which it is a part. As in *Baker*, he cannot sue TA for adopting or using the formula.

Other courts similarly recognize that copyright protection does not extend to processes or methods disclosed in published works, including theories, formulas, equations and recipes. *See, e.g., Lotus Dev. Corp. v. Borland Int'l, Inc*., 49 F.3d 807, 818 (1st Cir. 1995) (Lotus' menu command hierarchy embodied a "method of operation" excluded from copyright protection under § 102(b); "while original expression is necessary for copyright protection," "[c]ourts must still inquire whether original expression falls within one of the categories foreclosed from copyright protection by § 102(b)"); *Publ'ns Int'l Ltd. v. Meredith Corp.*, 88 F.3d 473, 481 (7th Cir. 1996) (recipes that disclose ingredients, measurements and cooking instructions are "excluded from copyright protection as either a 'procedure, process, [or] system'"); *Wyatt Tech. Corp. v. Malvern Instruments Inc*., 2009 WL 2365647, *6 (C.D. Cal. July 29, 2009) (copyright in software for a calculator not infringed: "A calculator is a method of operation that does not enjoy copyright protection."); *220 Labs., Inc. v. Babaii*, 2008

WL 5158863, *4 (C.D. Cal. Dec. 8, 2008) ("recipes, formulas, or compounds" are excluded from copyright protection); *Clark v. Crues*, 2007 WL 906702, *6-*7 (E.D. Mo. Mar. 23, 2007) (plaintiff's program for student discipline was an uncopyrightable "business idea"; "[t]heories, as such, are not copyrightable") (quoting *McMahon v. Prentice-Hall, Inc*., 486 F. Supp. 1296, 1303 (E.D. Mo. 1980)).

At bottom, TA merely published an article that reviewed Plaintiff's unprotected formula, and that showed how it could be rendered in computer code.  Because the article and computer code were based only on the unprotected formula, they are *not* infringing works, derivative or otherwise.  *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1078 (9th Cir. 2000) (holding that preexisting work underlying derivative work must itself be copyrightable for the derivative work to be infringing; vodka bottle was not copyrightable, so photographs of bottle could not be infringing works).  Plaintiff's formula falls well outside the subject matters that are protectable by copyright, and Count I should be dismissed.

II.    PLAINTIFF'S TRADEMARK CLAIMS ARE DEFICIENT AS A MATTER OF LAW BECAUSE TA ENGAGED IN ONLY A NOMINATIVE FAIR USE OF PLAINTIFF'S MARKS.

Plaintiff bases its trademark claim on TA's use of Plaintiff's marks in the Coles Article and Traders' Tips, which explain one of Plaintiff's formulas for determining when day traders should buy or sell stock and provide computer code implementing that formula.  Under the nominative fair use doctrine, this use of Plaintiff's marks creates no likelihood of confusion, and Plaintiff's trademark claim fails as a matter of law.

To invoke nominative fair use, TA need show only that it used Plaintiff's marks to refer to Plaintiff's work, rather than to describe its own products.  *Toyota Motor Sales, USA, Inc. v. Tabari*, 610 F.3d 1171, 1183 (9th Cir. 2010).  On their face, the Coles Article and Traders' Tips make clear that their use of Plaintiff's marks is a reference to Plaintiff's formulas.  [*See* Ex. A at 1, Ex. B at 1 and Ex. C. at 1 (referring to "Thomas DeMark's TD Sequential")]  Accordingly, the nominative fair use analysis applies, and it replaces the multi-factor "*Sleekcraft*" test that courts traditionally employ

in likelihood of confusion cases.  *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002).   Plaintiff carries the burden of establishing that TA's use was *not* a nominative fair use.  *Toyota*, 610 F.3d at 1182.

Specifically, to survive dismissal, Plaintiff's allegations must show that: (1) Plaintiff's formula is readily identifiable without the use of Plaintiff's trademarks; (2) TA used more of the marks than reasonably necessary to identify that formula; and (3) TA has done something, in connection with its use of Plaintiff's marks, to suggest that Plaintiff has sponsored or endorsed TA's published materials.  *New Kids*, 971 F.2d at 308.  Even taking all of Plaintiff's factual allegations as true, Plaintiff cannot carry this burden.

A.   Plaintiff's Formulas Are Not Readily Identifiable Without Using Plaintiff's Trademarks.

Plaintiff has named its formulas and obtained federal trademark registrations for those names.  Consequently, TA cannot readily refer to Plaintiff's methods without using Plaintiff's marks.  As the *New Kids* court explained, "one might refer to 'the two-time world champions' or 'the professional basketball team from Chicago,' but it's far simpler (and more likely to be understood) to refer to the Chicago Bulls."  *Id.* at 306.  It would be even more difficult to identify Plaintiff's formulas without using the names that Plaintiff gave them because those formulas involve complicated mathematical processes applied to stock-price trends.  To be sure, this is not merely a matter of saying "facial tissue" instead of "Kleenex."  This difficulty led the *New Kids* court to observe that in nominative use cases, "it is often virtually impossible to refer to a particular product for purposes of comparison, criticism, point of reference or any other such purpose without using the mark."  *Id.*

B.   TA Used Plaintiff's Marks Only As Reasonably Necessary to Refer to Plaintiff's Investment Formulas.

TA had to use Plaintiff's marks to alert its readers to the subject matter of the published materials, and it reasonably needed to repeat those marks for clarity and ease

of reading.  Moreover, Plaintiff registered its marks "without claim to any particular font, style, size, or color."  [Compl., Ex. 2 (U.S. Trademark Registrations)]  TA's plain-text reproductions of Plaintiff's plain-text marks were as little of those marks as TA could possibly use.

### C.   TA Has Done Nothing to Suggest that Plaintiff Has Sponsored or Endorsed TA's Published Materials.

Nowhere in TA's published materials has TA asserted any affiliation with, or sponsorship by, Plaintiff.  *Cairns*, 292 F.3d at 1154.  Nor is TA required to disclaim affirmatively an affiliation with Plaintiff to satisfy the nominative fair use defense. *Toyota Motor Sales*, 610 F.3d at 1177; *see also* 4 J. Thomas McCarthy, *McCarthy on Trademarks* § 23:11, at 23-88 (4th ed. 2011) (plaintiff must show that defendant's use has "gone beyond mere naming of the plaintiff's marks into affirmative claims or assertions which falsely suggest a connection with plaintiff").

Nevertheless, TA expressly disclaimed any attempt to trade on Plaintiff's goodwill by stating on the inside cover of the September 2011 issue of *Stocks & Commodities* that "[t]he names of products and services presented in this magazine are used only in an editorial fashion, and to the benefit of the trademark owner, with no intention of infringing on trademark rights."  In addition, after this lawsuit began, TA added the following disclaimer to reprints of the Coles Articles and its website, www.traders.com:

> The computer code published on this webpage reflects the efforts of third parties to code the indicators discussed in the following article, published in the September 2011 issue of *Technical Analysis of Stocks & Commodities*:   Andrew Coles, "TD Sequential and Ermanometry for Intraday Traders."  **The code published on this webpage or in the September 2011 issue of *Stocks & Commodities* is not sponsored or endorsed by, nor affiliated with, Thomas DeMark or his company, Market Studies LLC, and it should not be confused with any software that he or his company may offer, or license others to offer, for purchase or licensing**.

[Ex. C at 1 (emphasis added)]  Such disclaimers effectively undermine any likelihood of confusion in the nominative-use context.  *See Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 803 (9th Cir. 2002); *Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350, 352 (9th Cir. 1969) (shop owner's prominent distinction between itself and Volkswagen in his advertising "was sufficient to distinguish his business to the eye of the customer").

That TA engages in a commercial enterprise, or even that TA might compete with Plaintiff for the same customers interested in day-trading techniques, does *not* deprive TA of the nominative fair use defense.  "Where, as here, the use does not imply sponsorship or endorsement, the fact that it is carried on for profit and in competition with the trademark holder's business is beside the point."  *New Kids*, 971 F.2d at 309.  Indeed, the *New Kids* court expressly rejected the idea that trademark law could be used to limit competition and channel customers only to Plaintiff's licensed products.  *Id.*

TA's nominative fair use demonstrates that, even if Plaintiff's well-pled factual allegations are taken as true, Plaintiff cannot demonstrate a likelihood of confusion as a matter of law.  For the same reasons, Plaintiff's trademark "counterfeiting" and contributory infringement assertions lack merit.  [Compl. ¶¶ 51-52]

III.  **PLAINTIFF'S STATE-LAW CLAIMS ARE PREEMPTED BY THE FEDERAL COPYRIGHT ACT OR FAIL AS A MATTER OF LAW ON THE MERITS.**

A.  The Federal Copyright Act Preempts Plaintiff's State-Law Claims to the Extent Plaintiff Uses Them to Protect Copyright Rights.

Plaintiff cannot rely on its claims for unjust enrichment and unfair competition to protect those rights covered by federal copyright law because the Copyright Act expressly preempts any state-law claim where (1) the work at issue comes "within the subject matter of copyright," and (2) the right to be vindicated is "equivalent to any of the exclusive rights within the general scope of copyright."  *Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 976 (9th Cir. 1987) (explaining the two-part preemption test under 17 U.S.C. § 301), *overruled on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).  Because Plaintiff alleges that the formulas

embodied in the "DeMark Indicators" are copyrightable expression drawn from its copyrighted book [Compl., Ex. 1], the first prong of the preemption test is satisfied.

To the extent Plaintiff relies on its state-law claims to enjoin, and seek damages for, TA's allegedly unlawful reproduction of, and creation of derivative works from, Plaintiff's "TD Sequential" formula, the second prong of the preemption test is also satisfied.   To survive preemption, Plaintiff's state-law claims must protect a right qualitatively different from the copyright rights – that is, there must be an "extra element" that changes the nature of the claim.  *Del Madera*, 820 F.2d at 977.  Plaintiff's Complaint, however, essentially alleges copyright-related harms and trademark-related harms, and Plaintiff cannot use state law to remedy the former.  *See id.* (finding both unjust enrichment and unfair competition claims preempted by federal copyright law); *see also Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004) (unjust enrichment preempted by copyright law; citing Sixth and Tenth Circuit cases); 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 1.01[B][1][g] (2003) ("[A] state law cause of action for unjust enrichment or quasi contract should be regarded as an 'equivalent right' and hence, pre-empted insofar as it applies to copyright subject matter.").

Simply put, Plaintiff cannot use state law to end-run the careful balance that Congress struck in determining the boundaries of federal copyright protection.

B.   <u>If Plaintiff's Lanham Act Claim Is Dismissed, Plaintiff's State-Law Claims Fail As a Matter of Law to the Extent Plaintiff Uses Them to Protect Trademark-Related Rights.</u>

Plaintiff's state-law unjust enrichment and unfair competition claims fall with its Lanham Act claim.  For these claims, the Complaint alleges that TA has engaged in "reverse palming off" that is "likely to cause confusion among customers," and that TA's use of "Plaintiff's intangible property, including the content and goodwill of the 'DeMark Indicators' tools . . . has diverted and will continue to divert substantial profits from Plaintiff."  [Compl. ¶¶ 38, 40, 44]  Plaintiff's Lanham Act claim similarly alleges

that TA has caused "confusion in the market," that TA used trademarks "confusingly similar to Plaintiff's previously registered trademarks," and that "continuing use of the marks by Defendant will cause irreparable harm."  [*Id.* ¶¶ 48, 53, 56]  Plaintiff's state-law claims therefore target the same alleged misconduct, and seek to remedy the same wrongs, as Plaintiff's Lanham Act claim.   Indeed, the crux of all three claims is consumer confusion.

As explained above, however, the Ninth Circuit's decision in *New Kids* establishes that TA's "nominative fair use" of Plaintiff's trademarks does *not* create a likelihood of confusion as a matter of law.  *New Kids*, 971 F.2d at 308.  In the absence of consumer confusion, Plaintiff's state-law claims are unsupportable.  *See, e.g.¸ Cicle Francesco Moser, S.R.L. v. Cannondale USA, Inc*., 12 F. Supp. 2d 320, 324 (S.D.N.Y. 1998) ("[B]ecause plaintiff has failed to demonstrate a likelihood of confusion, plaintiff's common law claims for unfair competition and unjust enrichment (based on the same conduct as the Lanham Act claim) fail.").  Accordingly, if the Court dismisses Plaintiff's Lanham Act claim, Plaintiff cannot rely on its state-law claims to protect trademark-related rights, and those claims should be dismissed with prejudice.[5]

<u>Conclusion</u>

For the foregoing reasons, the Court should grant TA's Motion for Judgment on the Pleadings and dismiss plaintiff's Complaint in its entirety with prejudice.

---

[5] Alternatively, if the Court dismisses Plaintiff's federal copyright and trademark claims, the Court should exercise its discretion to dismiss the pendent state-law claims without prejudice on jurisdictional grounds. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial . . . , the state claims should be dismissed as well.").

RESPECTFULLY SUBMITTED this 9th day of December 2011.

STEPTOE & JOHNSON LLP


By  /s/ David J. Bodney
      David J. Bodney
      Peter S. Kozinets
      201 East Washington Street, Suite 1600
      Phoenix, Arizona 85004

      Attorneys for Defendant
      Technical Analysis, Inc.

CERTIFICATE OF SERVICE

I hereby certify that on December 9th, 2011, I caused the attached document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF Registrants:

Ray K. Harris
Fennemore Craig, P.C.
3003 N. Central Ave., Ste. 2600
Phoenix, Arizona  85012-2913

Andrew F. Halaby
Andrew C. Stone
Snell & Wilmer
400 E. Van Buren St., #1900
Phoenix, AZ  85004-2202

I hereby certify that on December 9th, 2011, I caused the attached document to be mailed to the following:

The Honorable James A. Teilborg
United States District Court of Arizona
Sandra Day O'Connor Courthouse, #523
401 W. Washington St., SPC 14
Phoenix, Arizona  85003-2120

/s/ Susan Pearce
Legal Secretary